IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACENCION ADOLFO CALDERON CAMPOS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:13-CV-04088-N |
| LONE STAR WHEEL COMPONENTS, INC., *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER

This Order addresses Plaintiff Acencion Adolfo Calderon Campos a/k/a Adolfo Calderon a/k/a Campos Acencion's ("Campos") motion for imposition of liquidated damages and entry of judgment [94] and Defendants Lone Star Wheel Components, Inc. ("Lone Star") and Jerry L. Coffey's (collectively, "Lone Star Defendants") motion for judgment as a matter of law [97]. The Court grants Campos's motion for liquidated damages and denies Lone Star Defendants' motion for judgment as a matter of law.

### I. ORIGINS OF THE MOTIONS

This case went to trial after Campos, a former employee of Lone Star, alleged (1) Lone Star Defendants misclassified him as an exempt employee under the Fair Labor Standards Act ("FLSA"); (2) Lone Star Defendants were negligent in retaining or supervising Jose Salvador, who attacked Campos while at work; and (3) Lone Star was grossly negligent because its forklift operator, Ramon Chavez, who was acting in a managerial capacity,

ORDER – 1

provided no assistance to Campos after he was assaulted.  First Am. Compl. 2, 5–7 [19]; Pl.'s Resp. 17 [99].  The Jury returned a verdict for Campos on all three claims as follows: $4,942 in damages for unpaid overtime wages, $3,200 in damages for physical pain and mental anguish, and $3,500 in exemplary damages for gross negligence.  Ct.'s Charge to the Jury 7–22 [91]; Verdict of the Jury 1 [92].

After the trial concluded, the parties each filed motions with the Court.  Campos moved for liquidated damages and entry of judgment in accordance with the jury's verdict. Pl.'s Mot. for Imposition of Liquidated Damages and Entry of J. 9 [94].  Campos also moved the Court to hold Lone Star Defendants jointly and severally liable for the overtime damages, and award Campos post-judgment interest, together with costs, attorneys' fees, and expenses. *Id.*  Lone Star Defendants renewed their motion for judgment as a matter of law, arguing that there was not legally sufficient evidence for a reasonable jury to reach a verdict for Campos on his claims.  Defs.' Mot. for J. as a Matter of Law 2 [97].

## II. LONE STAR DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

After a jury has rendered a verdict, judgment as a matter of law is proper only when "there is no legally sufficient evidentiary basis" to support that verdict.  *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003).  The court must make all reasonable inferences in favor of the nonmoving party.  *Id.*  Moreover, in the Fifth Circuit, a court reviewing a jury verdict must determine whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict."  *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004).  Finally, a court

must be "especially deferential" to a jury's findings. *Brown v. Bryan Cty., Okla*, 219 F.3d 450, 456 (5th Cir. 2000).

Lone Star Defendants contend that the Motor Carrier Act ("MCA") exemption applied to Campos because they claim his job duties qualified him as a "loader." *Id.* at 3–8. Furthermore, Lone Star Defendants claim there was not sufficient evidence presented at trial for a reasonable jury to find, as it did, that Salvador was incompetent and unfit, that Lone Star Defendants knew or should have known Salvador was incompetent and unfit, and that Lone Star Defendants' negligence was the proximate cause of Campos's injuries. *Id.* at 8–12. Finally, on Campos's claims for gross negligence arising from the altercation between Campos and Salvador, Lone Star Defendants claim there was legally insufficient evidence for a jury to find that Chavez, Lone Star's forklift operator, was a corporate vice-principal of Lone Star. *Id.*

### A. Campos Was Not Exempt Under the FLSA

The MCA exemption is an affirmative defense to Campos's FLSA overtime claims, and to prove the affirmative defense, Lone Star Defendants must demonstrate that Campos was (1) employed by a motor carrier subject to the Secretary of Transportation's jurisdiction; (2) engaged in activities directly affecting motor vehicle safety; and (3) engaged in activities involving the interstate transportation of goods. 29 C.F.R. § 782.2; *Vallejo v. Garda CL Sw., Inc.*, 56 F. Supp. 3d 862, 868 (S.D. Tex. 2014). "FLSA exemptions are construed narrowly and against the employer." *Vallejo*, 56 F. Supp. 3d at 868; *Barefoot v. Mid-Am. Dairymen, Inc.*, 16 F.3d 1216 (5th Cir. 1994). "The employer bears the burden of proving the

applicability of a claimed exemption." *Barefoot*, 16 F.3d at 1216; *Vallejo*, 56 F. Supp. 3d

at 868.

"A 'loader,' as defined for Motor Carrier Act . . . is an employee of a carrier . . .

whose duties include, among other things, the proper loading of his employer's motor

vehicles so that they may be safely operated on the highways of the country."

29 C.F.R. § 782.5. A loader's duties will usually

> include unloading the transfer of freight between vehicles and the warehouse,
> but he also engages in the work directly affecting safety of operation, for
> exercising judgment and discretion in planning and building a balanced load
> or in placing, distributing, or securing the pieces of freight in such a manner
> that the safe operation of the vehicles on the highways will not be jeopardized.

*Id.* This rule applies regardless of the proportion of the employee's time or of his activities

which is actually devoted to such safety-affecting work in the particular workweek.

*Id.* § 782.2.

Lone Star Defendants argue that "the uncontroverted evidence admitted at trial

established that Plaintiff was a 'loader' exempt from receiving overtime pay and no legally

sufficient evidence permitted the jury to find that he was not." Defs.' Mot for J. as a Matter

of Law 3. Lone Star Defendants further claim "[a]t trial Plaintiff admitted that he was a

loader, that shortly after he started his employment with [Lone Star] he began performing

loading duties, and that he thereafter regularly performed such duties. . . ." *Id.* at 4–5. Lone

Star Defendants failed to support any of these conclusory claims with citations to the trial

record. Indeed, in their Reply brief, Lone Star Defendants acknowledged their failure to cite

the trial record: "citations to the trial testimony were not provided by Defendants. However,

ORDER – 4

while admittedly helpful to the Court, specific citations to the trial record are not mandated by the rules." Defs.' Reply 2 [100]. Although it is true that neither the Federal Rules of Civil Procedure nor the local rules of the Northern District of Texas require specific citations to the record, the Court agrees with the conclusions of other courts who have confronted this problem: "we observe that it is particularly difficult, if not impossible, to properly evaluate a post-trial motion based on the sufficiency of evidence where the trial transcript have [sic] not been provided." *Graves v. Women's Christian All.*, 2003 WL 21961390, at *2 (E.D. Pa. 2003).

The Court does not recall Campos admitting that he was a loader. Because "the Court must make all reasonable inferences in favor of the nonmoving party," *DP*, 353 F.3d at 427, and because the Court is without the benefit of access to the trial record, the Court will not accept conclusory statements made by Lone Star Defendants that contradict the findings of the jury and the Court's own recollection of the trial. On the contrary, the Court recalls Campos providing sufficient evidence that he was not a loader under the MCA to support the jury's verdict. Specifically, the Court recalls Campos's testimony, and the testimony of Salvador, Saul Salinas, and Juan Salinas, which all indicated that Campos performed only menial tasks that would not place him within the MCA exemption. Accordingly, the Court denies Lone Star Defendants' motion for judgment as a matter of law on Campos's claim under the FLSA.

ORDER – 5

### *B. There Is Sufficient Evidence to Support the Jury's Finding of Negligence*

Campos claimed Lone Star Defendants had negligently supervised and retained Salvador after Salvador attacked Campos while Campos was engaged in normal work duties for Lone Star. First Am. Compl. 5–7. To prevail on a claim of negligent supervision or retention in Texas, Campos was required to submit enough evidence to the jury for it to find (1) Salvador was incompetent or unfit; (2) Lone Star Defendants knew or should have known that Salvador was incompetent or unfit; and (3) Lone Star Defendants' negligence was the proximate cause of Campos's injuries. *See Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 500 (Tex. App. – Ft. Worth 2002, no pet.). Lone Star Defendants argue that there was no evidence to support the jury's verdict because "at no time prior to the Physical Altercation did [Lone Star Defendants] have any information that would suggest that Salvador was unfit or had violent propensities." Defs.' Mot. for J. as a Matter of Law 10.

Campos argued that multiple witnesses testified at trial that Salvador threw lug-bolts that struck Campos on a separate occasion and that he had informed his immediate supervisor of this incident. Pl.'s Resp. 11. There was also testimony that Salvador had been involved in other altercations. *Id.* at 10. Once again, the Court is without the benefit of a transcript of the trial, but the Court's recollection is that there was sufficient evidence presented at trial for the jury to conclude, as it did, that Lone Star Defendants knew or should have known that Salvador was incompetent or unfit.

Lone Star Defendants further argued that there was no legally sufficient evidence presented at trial that would permit the jury to find that Lone Star Defendants' negligence

was the proximate cause of Campos's injuries because "no testimony was offered which would support a reasonable inference that anyone, including [Chavez], could have stopped the altercation before its conclusion." Defs.' Mot. for J. as a Matter of Law 11. This argument fails to persuade the Court, however, because the fact that Salvador and Campos were alone when the altercation occurred is evidence of negligent supervision. Accordingly, the Court denies Lone Star Defendants' motion for judgment as a matter of law on this claim.

### C. There is Sufficient Evidence to Support the Jury's Finding of Gross Negligence

Lone Star Defendants' final argument is that there was not legally sufficient evidence to support the jury's finding of gross negligence because there was no evidence introduced at trial that would permit the jury to find that Chavez was Lone Star's vice-principal. There is some dispute between the parties as to whether Lone Star Defendants raised this argument as one of the grounds for the motion for judgment as a matter of law at the close of evidence. "It is well-settled in this circuit that a motion for judgment as a matter of law filed post verdict cannot assert a ground that was not included in the motion for judgment as a matter of law made at the close of the evidence." *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998). As discussed above, the Court is without a transcript of the trial. The Court does not recall Lone Star Defendants presenting this argument at the close of evidence. Because "[t]he Court must make all reasonable inferences in favor of the nonmoving party," *DP*, 353 F.3d at 427, the Court concludes Lone Star Defendants may not present this argument to the Court in its renewed motion for judgment as a matter of law.

ORDER – 7

Even if the Court could consider this argument, however, it would find that there was sufficient evidence to support the jury's verdict for Campos on the gross negligence claim. Specifically, the Court recalls there was testimony at trial from multiple witnesses that Chavez was often left to supervise employees on behalf of Lone Star during the late shift. Furthermore, there was evidence presented that Chavez was the supervisor in charge the night of the altercation that resulted in Campos's injuries. This is sufficient to satisfy the Supreme Court of Texas's definition of a vice-principal under *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). Accordingly, the Court denies Lone Star Defendants' motion for judgment as a matter of law on this claim.

Because the Court finds that "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict," *Am. Home*, 378 F.3d at 487, on all three of Campos's claims, the Court denies Lone Star Defendants' motion for judgment as a matter of law.

### III. MOTION FOR IMPOSITION OF LIQUIDATED DAMAGES

Under the FLSA, a district court generally awards liquidated damages equal in amount to a plaintiff's actual damages. *Owens v. Marstek, L.L.C.*, 548 F. App'x 966, 972 (5th Cir. 2013). But if an employer has a good faith belief that it is not violating the FLSA, and if that belief is based on objectively reasonable grounds, a court may in its discretion award no liquidated damages. *Lee v. Coahoma Cty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991). An employer seeking to avoid paying the liquidated damages bears "the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good

ORDER – 8

faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979). "The burden is a difficult one to meet; double damages are the norm, single damages the exception." *Dalheim v. KDFW-TV*, 712 F. Supp. 533, 539 (N.D. Tex. 1989) (Fitzwater, J.).

To satisfy the good faith requirement, an employer is "obligated to demonstrate that it had an honest intention to ascertain what the FLSA required and to act in accordance with it." *Id.* at 536 (citation and punctuation omitted). Furthermore, "[g]ood faith requires some duty to investigate potential liability under the FLSA. An employer cannot claim good faith who blindly operates without making an investigation as to its responsibilities under the law." *Id.* (citing *Barcellona*, 597 F.2d at 469). Even if the Court finds that an employer acted with subjective good faith, however, the employer must also demonstrate that it acted with objective good faith. *Id.* at 539–40; *see also Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566–67 (11th Cir. 1991); *Equal lEmp. Opp. Comm. v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985) ("An employer has the burden of showing that the violation of the Equal Pay Act was in good faith and that the employer had reasonable grounds for believing that no violation took place."). To make this determination, a court looks to whether the employer's failure to pay overtime compensation was objectively reasonable. *Dalheim,* 712 F. Supp. at 539–40.

Judge Fitzwater of the Northern District of Texas, when addressing the issues of subjective good faith and objectively reasonable grounds in *Dalheim*, noted that Courts have

exercised their discretion to deny liquidated damages "where the employer exhibited a manifest desire to comply with the law." *Id.* at 541 (citation and punctuation omitted). In *Dalheim*, the court denied an award of liquidated damages to the plaintiff after a bench trial in which it found in favor of plaintiffs on their claim for overtime compensation. The court noted that "the action presented questions of first impression" and resolution of the question "was particularly knotty." *Id.* at 534–35 (punctuation and citation omitted). The defendant employer requested its legal counsel's opinion on the issue, and the firm "devoted attention to the question over a several-month period." *Id.* at 538. Furthermore, when the Department of Labor ("DOL") had previously investigated the employer, it found "no violations" and gave the employer a "clean bill of health." *Id.* at 536. These factors caused the court to find the employer acted in good faith and upon objectively reasonable grounds when it violated the FLSA. *Id.* at 539.

Lone Star Defendants argue that Coffey's testimony at trial showed a "manifest desire to comply with the overtime laws." Defs.' Resp. 5 [96]. Specifically, Coffey testified that many years before Lone Star Defendants hired Campos, Coffey conducted his own personal research regarding overtime obligations with respect to personnel working at the company facility. *Id.* Moreover, Coffey testified that when he learned as a result of a DOL investigation that some of the nonloader employees should have been classified as nonexempt, he promptly paid those employees back wages and remedied those situations to the satisfaction of the DOL. *Id.* Furthermore, Coffey and Raul Cantu testified Lone Star Defendants utilized an exempt loader form document, which quoted from the federal

ORDER – 10

regulations and detailed the requirements for an individual to fall within the loader exemption the Lone Star Defendants, for many years even before Campos's employment. *Id.* Campos signed the exempt loader form. *Id.* at 4. Lone Star Defendants assert that their use of that form for many years prior to and during Campos's employment confirms Lone Star Defendants had investigated the loader exemption and reasonably believed individuals such as Campos were not entitled to an overtime rate for any overtime hours worked. *Id.* Finally, Lone Star Defendants claim that a DOL investigator determined that individuals performing loading activities were properly classified as exempt. *Id.* at 4–5.

The Court concludes Lone Star Defendants failed to meet their "plain and substantial burden of persuading the court by proof that [their] failure to obey the statute was both in good faith and predicated upon . . . reasonable grounds." *Barcellona*, 597 F.2d at 468. The present case is distinguishable from *Dalheim*. First, this case does not present issues of first impression. The question of who qualifies as a loader under the FLSA has received a great deal of attention from the courts. *See* Order May, 29, 2015 10–12 [67] (briefly describing cases that detail the well-known requirements of the exemption in the FLSA that applies to loaders). Second, Coffey's personal research failed to rise to the level of "exhibit[ing] a manifest desire to comply with the law." *Dalheim*, 712 F. Supp. at 541. The employer in *Dalheim* corresponded with the DOL and its own counsel regularly for months to determine whether it was in compliance with the FLSA. Coffey's personal research did not rise near this level of investigation. Third, while the employer in *Dalheim* received a "clean bill of health" from the DOL, in the present case, the DOL found numerous violations. Pl.'s

Reply 4 [98]. Finally, although Lone Star Defendants provided Campos with the waiver, which he signed, they did not do so until they were notified that the DOL planned an investigation. *Id.* at 5–6. Lone Star Defendants did not translate the form into Spanish, and Campos could not read it. *Id.* at 6. In light of this, the Court concludes that Lone Star Defendants' violations of the FLSA were not in good faith and there was no objectively reasonable basis for the violations. Accordingly, the Court grants Campos's motion for liquidated damages.

CONCLUSION

The Court denies Lone Star Defendants' motion for judgment as a matter of law because there was a sufficient evidentiary basis for the jury's verdict. The Court grants Campos's motion for liquidated damages and orders Campos's unpaid overtime wages to be liquidated and doubled, totaling $9,844 ($4,942 for unpaid overtime wages and liquidated damages in the sum of $4,942). Accordingly, the Court orders Lone Star Defendants, jointly and severally, to pay $9,844 in liquidated damages for unpaid overtime wages, $3,200 in damages for physical pain and mental anguish because of Lone Star Defendants' negligence, and $3,500 in exemplary damages for Lone Star Defendants' gross negligence. Lone Star Defendants shall pay post-judgment interest, Campos's costs of court, attorneys' fees, and expenses in the sum that the Court awards by separate ruling on Campos's application for the same.

ORDER – 12

Signed March 14, 2016.

David C. Godbey
United States District Judge

ORDER – 13